UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DAVID BUCKLER,               )
                            )
        Plaintiff,           )
                            )
    vs.                     )        Case No. 4:09CV1728 CDP
                            )
DAVID EZERSKY, et al.,       )
                            )
        Defendants.          )

## MEMORANDUM AND ORDER

Plaintiff David Buckler, a prisoner in the custody of the Missouri

Department of Corrections, brought this § 1983 case acting *pro se*. He alleges that

defendant David Ezersky, a corrections officer, failed to protect him from physical

and sexual assault by his cellmate. I conclude that Ezersky is entitled to qualified

immunity, and so I will grant his motion for summary judgment.

## Background[1]

On June 26, 2008, Buckler was transferred to the Missouri Department of

Correction's Eastern Reception, Diagnostic, and Correctional Center, in Bonne

Terre, Missouri. He was assigned to a cell in the administrative segregation wing.

---

[1]Ezersky is the only remaining defendant in this case. All other defendants were dismissed on initial review under 28 U.S.C. § 1915(e) because Buckler's complaint was legally frivolous or failed to state a claim against those individuals. Buckler's claims relating to his initial placement in his assigned cell were against the dismissed defendants, and so those facts are not discussed here.

Buckler had not met his cellmate or placed him on his declared enemies list before June 26, 2008. Buckler testified that his cellmate was in administrative segregation for assaulting another inmate. For the next two days Buckler and his cellmate had no disagreements.

On June 29, 2008, Buckler's cellmate came up behind him, grabbed him by the neck, and dragged him off the top bunk onto the floor. Buckler testified that when he was on the ground his cellmate was hitting and kicking him. He tried to fight back, but at some point his cellmate hit him in the face and he lost consciousness. When he came to his cellmate was forcing him to perform oral sex. Throughout the assault, Buckler was either trying to get up from the floor or unconscious. Although Buckler asked his cellmate to stop hitting and kicking him, he did not call out for help.

After the sexual assault had begun, Buckler heard a warning that a corrections officer was in the wing, and his cellmate stopped the attack. Ezersky walked through the unit on a routine check. According to Buckler, Ezersky stopped at the cell, made eye contact with Buckler, saw him lying on the floor in the fetal position, and asked whether he was all right. Buckler claims he told Ezersky that he was not all right and asked Ezersky to place him in protective custody; then Ezersky shook his head and walked away. Ezersky admits that he

stopped at Buckler's cell, but denies having asked Buckler whether he was all right and says Buckler never asked him to be placed in protective custody.

After Ezersky left the wing where Buckler's cell was located, Buckler's cellmate hit him in the nose, causing it to bleed, then made Buckler get up and press the distress button. Several employees of the Missouri Department of Corrections responded to the distress call, including Ezersky and two nurses. Buckler was unconscious when they arrived and regained consciousness outside his cell while being treated by the nurses. Buckler alleges that when he got to the medical unit he told Ezersky about the physical and sexual assault, then asked Ezersky why he did not help him when he was lying on the floor during Ezersky's routine check. Buckler claims Ezersky responded by saying he was sorry but he had gotten busy and forgotten about him. Ezersky admits that Buckler told him about the assaults, but denies having been asked why he did not help or responding in the manner described by Buckler.

## Discussion

Qualified immunity is a question of law, *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005), and thus it is appropriately resolved on summary judgment, *see Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). In determining whether Ezersky is entitled to qualified immunity, I must consider

two questions: (1) whether the facts as shown, construed in the light most favorable to the plaintiff, establish that Buckler violated plaintiff's constitutional or statutory rights, and (2) whether the rights were clearly established at the time of the incident, such that a reasonable official would have known that his actions were unlawful.  *See Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815-16 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part on other grounds by Pearson*, 129 S. Ct. at 818.  For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Buckler argues that Ezersky violated his rights clearly established by the Eight Amendment to the United States Constitution.  The Eighth Amendment prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  "Because being subjected to assault is not part of the penalty that criminal offenders must pay for their offenses, the Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to take reasonable measures to guarantee inmate safety by protecting them from attacks by other prisoners."  *Whitson v. Stone County Jail*, 602 F.3d 920, 923 (8th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994)).  "Of course, prison officials do not

commit a constitutional violation every time one prisoner attacks another." *Young v. Selk*, 508 F.3d 868, 872 (8th Cir. 2007) (internal citations omitted).

"A government official violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates." *Berry v. Sherman*, 365 F.3d 631, 634 (8th Cir. 2004) (internal quotation marks and citations omitted). To avoid Ezerky's qualified immunity defense, Buckler must establish two elements, one objective and the other subjective. *Id.* First, Buckler must establish that his incarceration with his cellmate, when viewed objectively, posed a substantial or pervasive risk of harm. *Whitson*, 602 F.3d at 923; *Berry*, 365 F.3d at 634. Second, Buckler must establish that Ezersky subjectively knew of and disregarded the substantial risk of serious harm to him. *Berry*, 365 F.3d at 634 (citing *Farmer*, 511 U.S. at 833). "An official is deliberately indifferent if he or she actually knows of a substantial risk and fails to respond reasonably." *Whitson*, 602 F.3d at 923.

I.      Ezersky's Motion for Summary Judgment

Although Ezersky disputes some of Buckler's testimony, he agrees that for purposes of this motion for summary judgment I must assume Buckler's evidence is true. That evidence, when viewed objectively, does not establish that a substantial risk of harm to Buckler existed before he was attacked by his cellmate.

The only piece of evidence presented that lends any support to Buckler's position on the objective element of his Eighth Amendment claim is Buckler's testimony that his cellmate was in the segregation unit because he had assaulted another inmate. This fact alone is not enough to establish an objective risk of substantial harm to Buckler in particular. Buckler testified that he had not placed his cellmate on his declared enemies list before the attack and the two had been housed together for two days without having any disagreements. Further, Buckler himself could not articulate, in the testimony he gave with all the clarity of hindsight, a specific reason for his cellmate's attack. He testified that maybe one of his enemy's friends encouraged his cellmate to attack him. The undisputed evidence indicates that no one, including Buckler, believed he was at risk of substantial harm. The attack on Buckler was a surprise.

The evidence known to Ezersky, when viewed objectively, also does not establish that Buckler faced a substantial risk of harm even after the assault began. When Ezersky stopped at Buckler's cell, saw Buckler lying on the floor in the fetal position, and Buckler indicated that he wanted protective custody, which I must accept as true for purposes of this motion, an objectively substantial risk of harm still had not been established. Buckler testified that he did not call out for help at any time during the attack, and that he did not tell Ezersky an attack had occurred

until after he was in the medical unit.  Buckler also testified that he was not bleeding at that time and did not have any visible marks on his face that would have indicated to Ezersky that an attack had occurred.  Ezersky testified that he saw no bruising, bleeding, or anything else to indicate that an assault had occurred.  The objective risk was not so obvious that a reasonable jury might attribute such knowledge to a corrections officer in Ezersky's position.  *See Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1998) ("if a plaintiff presents evidence of 'very obvious and blatant circumstances' indicating that the defendant knew the risk existed, the jury may properly infer that the official *must* have known.") (emphasis in original).

Buckler has failed to meet his burden of establishing that the evidence would have indicated to a corrections officer in Ezersky's position that Buckler faced a substantial risk of harm before the attack in question began, and so his Eighth Amendment claim must fail.  Nothing in the evidence before me, even when viewed in the light most favorable to Buckler, suggests that anyone could have anticipated that Buckler's cellmate would attack him.  Further, the evidence is likewise insufficient to establish that an objective risk of harm was present when Ezersky stopped at Buckler's cell because there was no evidence that an attack had obviously occurred or was ongoing.  Ezersky is entitled to qualified immunity on

Buckler's failure to protect claims. Because Ezersky is entitled to qualified immunity, Buckler's motion for summary judgment must necessarily be denied.

Because the evidence does not establish that an objective risk of harm to Buckler existed from the view of a corrections officer in Ezersky's position, I need not address whether Ezersky subjectively acted, or failed to act, with deliberate indifference to Buckler's safety. *Berry v. Sherman*, 365 F.3d 631, 635 (8th Cir. 2004).

## II. Motion to Appoint Counsel

There is no constitutional or statutory right to appointed counsel in civil cases. *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984). I denied Buckler's previously filed motions to appoint counsel because I believed he was able to effectively manage his own case and follow the directives in the case management order. I continue to believe that the *Redfield* factors do not warrant appointment of counsel in this case. Buckler was able to oppose summary judgment and file a motion for summary judgment of his own. I carefully reviewed Buckler's entire deposition. Ezersky accepted as true, for purposes of summary judgment, the material facts that Buckler alleged. Despite Ezersky's concessions, Buckler's allegations against Ezersky simply did not rise to

the level of a constitutional violation, and appointment of counsel could not have changed that.

Accordingly,

**IT IS HEREBY ORDERED** that the defendant's motion for summary judgment [#31] is granted. A separate judgment in favor of the defendant is entered this same date.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment [#35] and his fourth motion to appoint counsel [#56] are denied.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 27th day of September, 2011.